UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES F. BOYLE, *et al.*,

                                  Plaintiffs,

      -v.-
                                                  7:08-CV-1065

TOWN OF HAMMOND, *et al.*,                          (TJM/GJD)

                                  Defendants.
_____

JAMES F. BOYLE
Plaintiff, *pro se*

THOMAS J. McAVOY, Senior United States District Judge

**MEMORANDUM DECISION and ORDER**

The Clerk has sent to this court a complaint filed by plaintiff James F. Boyle. (Dkt. No. 1). Although it is unclear where the complaint ends and the exhibits to the complaint begin, the entire document is *183* pages long. The title page of the complaint states that it is being brought under the "False Claims Act" and "Slavery Appeal."[1] (Dkt. No. 1 at 1). The first six pages of the document are numbered and page six contains plaintiff James F. Boyle's signature, thus, this court assumes that the first six pages constitute the complaint in this action, and the rest of the pages constitute unnumbered and unlabeled exhibits to the complaint.[2] Plaintiff has also moved for appointment of counsel. (Dkt. No. 3).

**DISCUSSION**

**1.**    **Filing Fee**

The law provides a filing fee of $350.00 for most civil actions. 28 U.S.C. § 1914(a). Plaintiff

---

[1] Plaintiff refers to these causes of action as "Federal Crimes." Compl. at 1.

[2] These pages contain photographs, drawings; letters; court decisions; "invoices" from plaintiff to various individuals including the undersigned and Clerk of the Court Lawrence Baerman; and various other writings by the plaintiff.

in this case has now paid the filing fee.[3] Notwithstanding that plaintiff has paid the filing fee, the court has "inherent authority" to dismiss a frivolous complaint. *Fitzgerald v. First East Seventh Street Tenants*, 221 F.3d 362, 363-64 (2d Cir. 2000). To survive dismissal for failure to state a claim, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above a speculative level.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). With these standards in mind, the court will proceed to review plaintiff's complaint.

**3.    Parties**

The problems with the complaint in this action begin on the first page. The caption of the case indicates that there are seven plaintiffs: James F. Boyle; Pamela Boyle; Keith Wilson; William Miller; Martha Miller; Beverly Camelier; and James Gardner. Compl. at 1. However, under the heading "Appearances," only "James F. Boyle, Plaintiff, pro se" is listed. *Id.* The "complaint" is signed only by James F. Boyle. Compl. at p.6. There is no indication that James F. Boyle is a licensed attorney who may represent other individuals in court.

The statute governing appearances in Federal Court provides that "parties may plead and conduct their own cases personally or by counsel. . . ." 28 U.S.C. § 1654. The Second Circuit has interpreted this statute to allow two types of representation, "'that by an attorney admitted to the

---

[3] When plaintiff filed this action on October 6, 2008, he had neither paid the fee nor moved to proceed *in forma pauperis* under 28 U.S.C. § 1915. Plaintiff paid the filing fee on October 22, 2008.

practice of law by a governmental regulatory body and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)(quotation omitted). The statute does not allow "unlicensed laymen" to represent anyone but themselves. *Id.* In this case, James F. Boyle may not represent any of the other individuals that he lists as plaintiffs. Those individuals could have signed the complaint and appeared as *pro se* plaintiffs, but James F. Boyle may not sign the complaint for them or proceed on their behalf. Thus, for purpose of this case, the court must treat James F. Boyle as the only plaintiff in this action.

**3.    Background and Procedural History**

In his complaint, plaintiff alleges that the government of Hammond Town, led by its Town Supervisor, Janie Hollister[4] made "false claims" and improperly billed plaintiff, taking away more Social Security than was lawful to "support the general welfare." Compl. at 2. Plaintiff appears to be complaining that his land was improperly assessed, resulting in his payment of illegally inflated property taxes. Plaintiff states that at one time, he was able to get an assessment corrected, but that the "honest" assessor was dismissed. Compl. at 2. Plaintiff also seems to claim that, at the same time, Town Supervisor Hollister and the Hammond Town Board were allowed to pay substantially less taxes than plaintiff. Compl. at 2-4. Plaintiff alleges that this false and unequal assessment was imposed by the "Queen's Assessor Stephen Teele" using "larceny by trick." Compl. at 4. Plaintiff then states that "[t]he Queen's Assessor makes a False Claim to George the III's court." *Id.*

The complaint then abruptly turns to plaintiff's claim that the Hammond Town Board and the "Queen" allowed a probationary snowplow driver to stop plowing and sanding during an ice storm, causing a dangerous condition for plaintiff's wife and the other residents of plaintiff's development on December 16, *2003*. Compl. at 5. Apparently the Town stopped plowing the access road to

---

[4] Plaintiff refers to the Town Supervisor as the "Queen" throughout the complaint.

plaintiff's development.[5] Plaintiff states that as the "only able bodied seaman," he was "thrown into SLAVERY at hard labor clearing New York State and the Queen's roadway." *Id.* Plaintiff seems to be claiming that he has no choice but to plow the road, and this constitutes slavery, imposed upon him by defendants in violation of the 13th Amendment. Compl. at 6. Plaintiff states that the "New York State/Hammond Town SLAVE matter is before local Court Judge Demarest seeking injunction to prevent further public 'Reckless Endangerment' . . . ." Compl. at 5.

This complaint is not Mr. Boyle's first attempt at making the essentially same claims in this court. Plaintiff filed a previous action[6] in this court against several defendants, including the Hammond Town Board; several Town Board members; the Hammond Town Attorney; the Town of Hammond "truck driver;" the Hammond Town Assessor (Teele); and Town Supervisor Hollister. *Boyle v. Paddock*, 7:07-CV-84 (TJM/GJD). The original complaint in 07-CV-84 made the same factual allegations that he makes in this complaint, however, in 07-CV-84, in addition to the Town of Hammond, plaintiff sued the individual Town Board Members, Assessor, Supervisor, and truck driver. The original complaint also alleged that Town Assessor Teele "selectively assessed" plaintiff's property and that the Town truck driver "abandoned his duties in the December 12, 2003 ice storm leaving a hazardous ice slope . . .", endangering plaintiff's wife.

Plaintiff filed 07-CV-84 pursuant to 42 U.S.C. § 1983, and on February 8, 2007, this court issued an Order, finding that plaintiff had cited no basis for this court's jurisdiction, but affording plaintiff time to file an amended complaint. (Dkt. No. 8 in 07-CV-84). Plaintiff complied with the court's order and filed an amended complaint, however, this court found that the amendment did not

---

[5] It is unclear from the six page complaint when the Town stopped plowing the road, and how long this situation has lasted, however, one of the plaintiff's exhibits is a decision by New York State Supreme Court Justice David Demarest, dated May 15, 2008, indicating that this dispute is still in the process of being resolved.

[6] Plaintiff also paid the filing fee in that action.

cure the defects in the original complaint, and did not state a claim for relief. On March 13, 2007, the complaint was dismissed for failure to state a claim. (Dkt. No. 12 in 07-CV-84). Although plaintiff was granted an extension of time to file an appeal, it does not appear that any appeal was ever filed. *See* (Dkt. No. 16 in 07-CV-84).

Plaintiff has filed this new action in which he essentially makes the same claims as in 07-CV-84, but names only the Town of Hammond and the New York State Department of Transportation. The other difference in this action is that plaintiff is attempting to sue under different bases of jurisdiction. Instead of bringing this action under 42 U.S.C. § 1983, plaintiff is now attempting to bring his claims under the False Claims Act, 31 U.S.C. § 3729 *et seq.* for the property tax claim, and directly under the 13th Amendment for his alleged slavery cause of action. He also mentions that this is a complaint for two "FEDERAL CRIMES." Plaintiff does not state a claim under the False Claims Act, nor does he state a claim for a violation of the 13th Amendment. Finally, he cannot bring a complaint "for two FEDERAL CRIMES."

4.  **False Claims**

The False Claims Act, 31 U.S.C. § 3729 *et seq.* contains a "qui tam" provision authorizing private citizens, called "relators," to sue on behalf of the United States government to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of those claims or to avoid the payment of money or property to the Government. *See* 31 U.S.C. § 3730(b). The False Claims Act applies to claims against the United States government. In order to bring an action under the False Claims Act, the relator must file the complaint under seal and give the government an opportunity to intervene. *Id.* § 3730(b)(2). The Government then has an initial period of 60 days to decide whether to intervene. *Id.* If the Government chooses not to intervene, the relator may proceed on the

Government's behalf and, in either case, the relator is entitled to a percentage of any award received. 31 U.S.C. §§ 3730(c)(3); 3729(d).

Plaintiff in this case does not claim that either of the defendants is making false claims directly against the United States government. Plaintiff alleges that the Town of Hammond made "FALSE CLAIMS to bill plaintiff pro se falsely . . . ." Compl. at 2. Plaintiff then states that the Town of Hammond falsely "removed" Social Security from the plaintiff. *Id.* Plaintiff may be attempting to claim that by over assessing his property and taking his money, which included Social Security payments from the Government, the Town of Hammond was actually making a "false claim" against the United States for which plaintiff could then sue under the False Claims Act. The court makes this assumption because plaintiff's reference to Social Security is the only reference that has any relationship to the United States government. Plaintiff does not allege that the New York State Department of Transportation had anything to do with this "taking." Thus, the claim does not appear to be made against the New York State Department of Transportation.

Plaintiff's apparent claim is not the type of "false claim" for which plaintiff can sue under the False Claims Act. Once the Social Security Administration pays plaintiff his benefits, the money no longer belongs to the Government. It belongs to the plaintiff. If plaintiff was falsely billed or his property improperly assessed, resulting in an inflated tax payment, it is the plaintiff who is injured, and it is not a claim that plaintiff can bring "on behalf of" the United States. Thus, plaintiff may not proceed under the False Claims Act.[7] Any claim that he can file this action on behalf of the United States government has absolutely no basis in law or in fact, and may be dismissed both as frivolous and for failure to state a claim.

---

[7] The court would also point out that plaintiff did not proceed in accordance with the False Claims Act by filing the action under seal. Since the substance of plaintiff's claim under the Act is frivolous, the fact that he did not proceed properly is irrelevant to this decision.

5.  **Involuntary Servitude and the 13th Amendment**

Although the complaint itself is unclear, the court has read a May 15, 2008 decision by New York State Supreme Court Justice David Demarest, attached to the complaint in order to clarify the facts surrounding plaintiff's claim. Justice Demarest's decision states that, the petitioners[8] claim that on December 16, 2003, after many years of plowing the road that connects New York State Route 12 with Lillebridge Lane and Overlook Drive, the Town of Hammond stopped maintaining the road. *James Boyle, et al. v. Town of Hammond and New York State DOT*, Index. No. 126663, IAS # 44-1-2008-0059 (Demarest, J.). Plaintiff and the other individuals who are owners of property that is served by the access road claim that the New York State Department of Transportation (DOT) should have begun maintaining the road when the Town of Hammond stopped doing so in 2003. *Id.* at 2.

This plaintiff, together with the other individuals that he lists as plaintiffs in this case brought the Article 78 proceeding in New York State Supreme Court, to determine which entity should be responsible for maintaining the road. The Article 78 petition also asked for damages. The case in New York State Supreme Court was ongoing as of May 2008. In Justice Demarest's decision, he found that "[n]otwithstanding the determination that the access road is a public road, Petitioners' ultimate relief sought cannot be made on the submissions alone." *Id.* at 6. Justice Demarest found that a "plenary hearing" would be necessary to take testimony and resolve factual issues regarding which entity would be responsible for the road's maintenance. *Id.* at 6-7. The judge then stated that after discovery was completed, counsel should file a Note of Issue, and a date would be set for the hearing. *Id.* This court must point out that the petitioners in the Article 78 proceeding are represented by counsel. In fact, plaintiff has attached various letters from the attorney representing the petitioners

---

[8] The caption in this case is identical to the caption in the state court action. The state court action is an Article 78 proceeding under N.Y. CIV. PRAC. L. & R. § 7801 *et seq.* The "petitioners" in the state court action are the "plaintiffs" listed in the caption of this complaint.

in state court to this complaint.

In this case, plaintiff states in the complaint that the ultimate issue of who is responsible for maintaining the road is before Justice Demarest. Plaintiff's claim in federal court appears to be that because he was *forced* to take up the maintenance of the road himself, the Town and the DOT have subjected him to "SLAVERY" in violation of the 13th Amendment. Plaintiff states that he was "the only able bodied seaman," and he was "thrown into hard labor clearing New York State and the Queen's roadway." Compl. at 5.

### A. New York State DOT

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). A claim against a state agency is considered a claim against the state and implicates the Eleventh Amendment because the state is the "real" party in interest. *Id.* at 101. The Eleventh Amendment bars suits against the state, state agencies, and state officers in their official capacities. *See Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001). Exceptions to Eleventh Amendment immunity exist if the state waives immunity and consents to suit in federal court or if Congress abrogates the state's immunity by statute. *Id.* at 69-70. When the issue is waiver of immunity, the state's consent to suit must be "unequivocally expressed." *Penhurst*, 465 U.S. at 99.

In this case, the New York State DOT is an agency of New York State and is, thus, immune from suit unless the state has waived that immunity or Congress has abrogated the immunity by statute. Plaintiff states the he is suing directly under the 13th Amendment of the United States Constitution, not under any federal statute in which Congress may have abrogated immunity. There is no evidence that the state has waived immunity for such actions. Thus, any 13th Amendment claim may be dismissed as against the New York State DOT, regardless of how plaintiff is attempting to

raise this claim.[9]

### B. Town of Hammond

Even assuming that plaintiff could bring his 13th Amendment claim against the Town, plaintiff does not state a claim for any 13th Amendment violation in this case. The Thirteenth Amendment to the United States Constitution states that "neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII, § 1. The Supreme Court has stated that the exact range of conditions that the Thirteenth Amendment prohibits is harder to define than the "spirit of the phase 'involuntary servitude.'" *United States v. Kozminski*, 487 U.S. 931, 942 (1988). The phrase "involuntary servitude" was intended "'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Id.* (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)).

The Second Circuit has stated that courts have consistently found that the involuntary servitude standard "is not so rigorous as to prohibit all forms of labor that one person is compelled to perform for the benefit of another." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459 (2d Cir.), *cert. denied*, 519 U.S. 813 (1996). The Thirteenth Amendment "does not bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are 'exceedingly bad.'" *Id.* (quoting *United States v. Shackney*, 333 F.2d 475, 486 (2d Cir. 1964)). In *Immediato*, the Second Circuit listed instances in which the state could require an individual to work

---

[9] Plaintiff has not mentioned 42 U.S.C. § 1983 in this case, perhaps because this court dismissed his claims in 07-CV-84, when he attempted to raise similar issues against individual defendants and the Town of Hammond under section 1983. The Eleventh Amendment immunity would apply to any claims against New York State DOT in any event. It is now well-settled that the state and its agencies cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.

without running afoul of the Thirteenth Amendment. *Id.* at 486. Included in those cases were situations in which attorneys could be required to perform *pro bono* services or choose not to practice law, to situations in which individuals were forced to work to keep up public roads or face criminal prosecution. *Id.* (citing *inter alia United States v. 30.64 Acres of Land*, 795 F.2d 796, 800-801 (9th Cir 1986)(pro bono work by attorney); *Butler v. Perry*, 240 U.S. at 333 (upkeep of roads)).

Plaintiff in this case has apparently taken it upon himself to maintain the road that is the subject of plaintiff's state court litigation. Neither the Town nor the New York State DOT has *required* him to do so. Plaintiff is currently suing in New York State court to determine which of the two defendants is responsible for the road maintenance, and has also asked for damages in the state court action. He now wishes to sue the Town and the New York State DOT in federal court for involuntary servitude because plaintiff *chose* to maintain the road. Plaintiff states he was forced to do so in order to maintain the safety of his family and the other families that live in his subdivision. Unfortunately, based on the case law discussed above, plaintiff cannot state a cause of action under the Thirteenth Amendment no matter why he chose to plow the road, even if the consequences of choosing not to plow the road would have been "exceedingly bad." Thus, plaintiff's Thirteenth Amendment claim must be dismissed as against both defendants.

6.      **"Federal Crimes"**

The court must mention that plaintiff's complaint also states that he is bringing this action for two "Federal Crimes." The court would first point out that a "qui tam" action is a *civil* complaint. 31 U.S.C. § 3730(b). The law specifically provides that a private party may only bring a "civil action" for a violation of section 3729. *Id.* Plaintiff also cites no basis for his bringing a criminal action under the Thirteenth Amendment. The law is quite clear that in the federal system, crimes are always prosecuted by the Federal Government, not by private complaints. *Hill v. DiDio*, 191 Fed. Appx. 13,

14-15 (2d Cir. 2006)(citing *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86-87 (2d Cir. 1972)). To conclude otherwise, the party must show that Congress specifically intended to create a private right of action pursuant to the statutes that plaintiff seeks to enforce. *Id.*

Plaintiff in this case has not shown that Congress has provided a private right of action to bring a criminal action pursuant to the statute or Constitutional provision that he cites. Thus, to the extent that plaintiff alleges that he is bringing a complaint for Federal Crimes, the complaint must also be dismissed as frivolous.

**7.     New York State Property Taxes**

To the extent that plaintiff's complaint can be read as raising any challenges to his state property tax assessment, plaintiff cannot bring these claims in federal court. The Tax Injunction Act, 28 U.S.C. § 1341 specifically prevents a federal court from enjoining, suspending, or restraining the assessment, levy or collection of any tax under state law where there is a plain, speedy, and efficient remedy available in State court. The Supreme Court has held that even in cases not specifically covered by section 1341, the federal court should refrain from interfering with state taxation as a principle of comity. *Fair Assessment In Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981). In *Fair Assessment*, plaintiffs sought to challenge the unequal assessment of local property taxes under 42 U.S.C. § 1983. *Id.*

It has been held that New York provides a "plain, speedy, and efficient" remedy to challenge state tax assessments. *See 423 South Salina St., Inc. v. Syracuse*, 566 F. Supp. 484, 491-92 (N.D.N.Y.), *aff'd*, 724 f.2d 26, 27 (2d Cir. 1983); *Izzo v. City of Syracuse*, 98-CV-778, 2000 U.S. Dist. LEXIS 19784, *7-10 (N.D.N.Y. Aug. 3, 2000). In *Izzo*, plaintiff claimed that the defendants "illegally and fraudulently" over assessed certain of his properties. 2000 U.S. Dist. LEXIS 19784 at *6-7. The court specifically held that it was precluded from exercising jurisdiction over challenges to

state, local or municipal tax assessments, regardless of what type of relief was sought. *Id.* at *7-8 & n.3. The court in *Izzo* also reviewed the state's system of challenging real property tax assessments and found them sufficient. *Id.* at *9-10.

Thus, plaintiff in this case cannot challenge his state tax assessment in federal court, regardless of his claim that the assessor has acted illegally, unequally, or falsely. To the extent that this complaint or the exhibits attached to it can be read to challenge plaintiff's tax assessment, the claim may be dismissed with prejudice.

**8.**     **Appointment of Counsel**

Since this court is dismissing plaintiff's action, the court need not consider whether to appoint counsel. However, the court would also point out that there is no constitutional right to appointment of counsel in a civil case, and the Second Circuit has cautioned against "routine" appointment of pro bono counsel. *Harmon v. Runyon*, No. 96 Civ. 6080, 1997 U.S. Dist. LEXIS 2849, *2 (S.D.N.Y. Mar. 17, 1997)(citing Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)). Additionally, in order to qualify for appointment of counsel, the party must be indigent, and the indigent party must have attempted to obtain counsel on his or her own. *See* 28 U.S.C. § 1915(e)(1)(the court may request an attorney to represent any person unable to afford counsel); *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994); *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).

First, the court notes that plaintiff paid the filing fee, and is represented by counsel in his state court action. Plaintiff states that he has had to hire an attorney in state court that has cost him thousands of dollars, and that plaintiff's social security combined with his wife's social security is not likely to "support a Federal Trial." Pl. Declaration at p.3. Although plaintiff states that he cannot afford to proceed, plaintiff has failed to complete an application to proceed *in forma pauperis*, which

contains other questions relevant to plaintiff's assets. A review of plaintiff's motion for appointment of counsel shows that he has not accurately completed the form for appointment of counsel. The form requests the names of attorneys contacted by plaintiff in an attempt to obtain counsel. The form also requires that plaintiff attach any letters that he received from those attorneys. (Dkt. No. 3 at 1). Although plaintiff lists the names of four attorneys,[10] only one of those attorneys may have been contacted to represent plaintiff.

Plaintiff has listed Scott Goldie, Esq., who is the attorney representing plaintiff and the other individuals in the state court action. The letter that plaintiff sent to Attorney Goldie was dated October 10, 2008, and merely stated that plaintiff had "filed" in federal court. Pl. Ex. C. The letter further states that plaintiff believes that a jury will be convinced of "governmental tax theft and retaliatory 'compelled servitude,' however, "[t]he paperwork has blocked me from exercising constitutional right." *Id.* Plaintiff ends the letter by asking: "Can you help me get before the Court?" *Id.* No response from Attorney Goldie has been included as an exhibit to plaintiff's motion, and it is unclear whether anyone reading plaintiff's letter would understand that he was attempting to obtain pro bono counsel by that request.

The rest of the letters that plaintiff has attached to his motion for appointment of counsel are not letters requesting attorneys to take plaintiff's case in federal court. Some of the letters are dated in 2007 and are written to various state officials such as the New York State Comptroller, Thomas P. Di Napoli. Pl. Ex. D. Oddly enough, plaintiff states in this letter, dated December 21, 2007 that he has "asserted" his "civil right of appeal to the Federal Court." *Id.* Plaintiff also states that he believes that "the Court has found probable cause to allow criminal or civil penalty." *Id.* This court does not

---

[10] Plaintiff also lists the name of a former defendant Town Assessor Teele, but clearly this is not an individual from whom plaintiff requested pro bono representation.

know what federal court plaintiff is referring to, but plaintiff's 2007 case was dismissed by the undersigned in March of 2007, and although plaintiff requested an extension of time to appeal, he did not do so. This letter is clearly not an attempt to obtain pro bono counsel. Plaintiff's motion for appointment of counsel is **denied**, both as moot because the court is ordering dismissal of this action and because plaintiff has not properly shown his eligibility for such appointment.

9.      **Opportunity to Amend**

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, plaintiff has already attempted to bring his claims in 07-CV-84. This court gave him an opportunity to amend his complaint to state a claim, and plaintiff's amended complaint did not cure the deficiencies in the original, resulting in a dismissal. Now he has returned in an attempt to re-cycle his original claims by bringing them under new and different bases, while making the same allegations that were dismissed in 2007.

Additionally, it is quite clear that plaintiff will not be able to amend his complaint in any way to bring a "qui tam" action for the reasons stated above. Nor can plaintiff amend his complaint to properly state a claim for involuntary servitude. His claims have no basis in law or in fact and may be dismissed as frivolous.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the complaint is **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as frivolous, and it is further

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**.


Dated:October 24, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge